## McKEEFREY et al. v. DIMMICK et al.

(Circuit Court, E. D. Pennsylvania. January 15, 1909.)

No. 93.

1. EVIDENCE (§ 457*)—TRADE TERMS—PAROL EVIDENCE—CONSTRUCTION OF CONTRACT.

Where, in an action for breach of contract to purchase "Geneva washed furnace coke," it was claimed that such terms by trade usage required coke of a specified quality, evidence that washed furnace coke meant a coke containing not more than 1.32 per cent. of sulphur and of certain friability and size, and that the coke furnished did not comply with such requirements, was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2105; Dec. Dig. § 457.*]

2. DAMAGES (§ 140*)—AWARD—ADEQUACY.

Where, in an action for breach of contract to purchase a certain number of tons of coke, the evidence as to the damages sustained by the buyer's refusal to accept a delivery of a specified number of tons was of such an uncertain character as to warrant a finding of no damages or damages in any amount up to 90 cents a ton, a verdict awarding plaintiff 10 cents a ton was not inadequate.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 404; Dec. Dig. § 140.*]

At Law. Overruling motion and reasons for a new trial.

Samuel W. Cooper, for plaintiffs.

W. H. Ramsay and Alex. Simpson, Jr., for defendants.

HOLLAND, District Judge. This was an action to recover damages for a breach of contract. The defendants, by a written agreement, agreed to purchase from the plaintiffs a certain number of tons of "Geneva washed furnace coke," to be delivered to their customers. In the statement filed plaintiffs claimed (a) a balance of $667.76 upon coke delivered to third parties on defendants' order, and (b) damages amounting to $4,105.80, being 90 cents per ton on 4,563$^{18}$/₂₀ tons, for a refusal on the part of defendants to accept delivery of this amount of coke on the contract. The defense set up by the defendants was that the coke delivered was not "washed furnace coke," either in physical qualities or chemical analysis; that "washed furnace coke," whether from Geneva or other mines, means a coke of certain physical qualities, to wit, of a size and hardness to make it a coke available for furnace use, and which in chemical analysis may not contain more than 1.32 per cent. of sulphur, otherwise it could not be used as a furnace coke.

The plaintiffs put in evidence a great number of letters before the contract was made and during the time of delivery, in which they stated they "would not guarantee the analysis of the coke," which analysis they submitted at the time the contract was made, and which showed sulphur at less than 1 per cent., yet at the execution of the contract they agreed to furnish a "washed furnace coke"; and the defense contended that a "washed furnace coke" meant a coke, both in physical qualities and chemical analysis, that could be used in a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

furnace, and offered evidence to prove that, as to a certain number of tons of coke furnished to a third party, it was small in size and friable, and in consequence was not what was regarded in the trade as a furnace coke. Witnesses were called for the purpose of showing that a "furnace coke" was different in its friability and size to that which was furnished, and it was also contended that the defendants refused to accept delivery of the 4,563$^{18}/_{20}$ tons because it contained more than 1.32 per cent. of sulphur, and could not be used in a furnace, and was not "washed furnace coke." Evidence was offered for the purpose of proving that in the trade a "furnace coke" could not be used containing sulphur above the percentage named. To the offer of this evidence the plaintiffs objected, upon the ground that the expression "washed furnace coke" was self-explanatory, and insisted that they complied with their contract to furnish "Geneva washed furnace coke" by delivering washed coke from the Geneva mines.

Upon the evidence submitted by the plaintiffs that the coke furnished was in the trade regarded as "washed furnace coke," and that offered by the defendants that the kind of coke delivered and offered to be delivered was not a "washed furnace coke," the question was submitted to the jury, and a verdict was returned by it in favor of the plaintiffs in the sum of $1,176.06, finding in favor of the plaintiffs' contention that they had complied with their contract in that they had furnished to the defendants' customers "Geneva washed furnace coke."

The cases cited by the defendants on the subject of the proof of customs in trade and the meaning of trade terms do not establish their contention that such evidence cannot be offered. When the defense of custom or usage or meaning of trade terms is set up, the defendants have a right to produce whatever evidence they have in support of their defense, and if it does not come up to the standard of proof required, of course, the defense fails, as it did in this case.

On the question of the amount of damages to be awarded for a refusal to accept delivery of the 4,563$^{18}/_{20}$ tons, the evidence was of such an uncertain character to warrant the jury in finding no damages at all or damages in any amount up to 90 cents per ton. The amount of the verdict, as suggested by plaintiffs' counsel, would indicate the jury awarded about 10 cents per ton on the 4,563$^{18}/_{20}$ tons. The plaintiffs claimed $667.76 for deductions made on account of coke which had already been delivered. Assuming the jury found that the plaintiffs had complied with their contract and furnished "Geneva washed furnace coke," there was no doubt an award of this amount of the claim and interest from July, 1907 to November 13, 1908, being $51.90. The balance of the verdict, amounting to $456.40, could be arrived at by awarding 10 cents per ton damages for a failure to accept delivery. At any rate, the verdict shows that there was some amount awarded per ton on 4,563$^{18}/_{20}$ tons, which the defendants refused to accept, and the court cannot say the award was inadequate. It was entirely for the jury.

The questions of fact, with proper instructions as to the law, were properly submitted. It was the province of the jury to determine what evidence in the cause should be accepted by them upon which to base a verdict, and the fact that there is other testimony which

would warrant the finding of a different verdict is no reason why a new trial should be granted.

Motion for new trial is overruled.